HIPPENSTEEL *v.* SYSTEM FEDERATION NO. 9, RAILWAY
EMPLOYEES' DEPARTMENT OF THE CHESAPEAKE
& OHIO RAILWAY COMPANY.

1. LABOR—SENIORITY STATUS—JURISDICTION.

The seniority status of an employee may be established with
finality only by a tribunal having jurisdiction to determine
such a status in the event it is disputed that computation of
seniority is according to the labor contract between the union
and the employer.

2. SAME—UNION—PROPERTY RIGHT OF A MEMBER.

A union has no right or power to take a member-employee's legal
rights or property from him.

3. SAME—SENIORITY STATUS—COLLECTIVE BARGAINING AGREEMENT—
JURISDICTION—RAILROAD ADJUSTMENT BOARD—COURTS.

An individual employee of a railroad company may invoke the
jurisdiction of the railroad adjustment board to determine
his seniority status under a collective bargaining agreement
between the union of which he is a member and his employer
and since the board's jurisdiction is exclusive in such a mat-
ter, a bill in chancery to enforce a claimed seniority status
does not lie (45 USCA, § 151 *et seq.*).

Appeal from Kent; Brown (William B.), J.   Sub-
mitted April 7, 1953.   (Docket No. 9, Calendar No.
45,078.)   Decided June 22, 1953.

Bill by Von C. Hippensteel against System Feder-
ation No. 9, Railway Employees' Department of the
Chesapeake & Ohio Railway Company and others
to restrain change in seniority roster and for man-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 31 Am Jur, Labor §§ 102, 112.
[1–3] Collective labor agreements.   95 ALR 10.

datory injunction requiring defendants to restore plaintiff to his former position on the seniority roster. Motion to dismiss denied. Defendants appeal. Reversed.

*Gerald M. Henry* (*McCobb, Heaney & Dunn,* of counsel), for plaintiff.

*Varnum, Riddering, Wierengo & Christenson* and *Mulholland, Robie & Hickey,* for defendants.

ADAMS, J. The plaintiff and appellee, Von C. Hippensteel, is an employee of the Chesapeake & Ohio Railway Company and works at the Wyoming roundhouse in Grand Rapids, Michigan. The wages, rules and working conditions applicable to his employment are established and governed by a collective bargaining agreement which, as amended from time to time, has been in effect since June 24, 1934, between his employer and System Federation No. 9, Railway Employees' Department of the Chesapeake & Ohio Railway Company (A. F. of L.).

Plaintiff was first employed by the Pere Marquette Railway (later taken over by the Chesapeake & Ohio Railway Company) on August 31, 1922. On May 14, 1923, he resigned. He was re-employed September 5, 1923, as a carman and subsequently on September 15, 1927, was transferred to the roundhouse as a tankman. On June 25, 1934, a collective-bargaining agreement, which among other things contained certain provisions relating to seniority, was entered into between the employer and System Federation No. 9, bargaining agent for the members of the various craft unions employed on that part of the Chesapeake & Ohio Railway which was formerly the Pere Marquette Railway Company. Subsequent to the execution of the collective bargaining agreement, the seniority date established for plain-

tiff on the employer's seniority roster was September 5, 1923.

Plaintiff's seniority status was questioned by other employees of the company in 1943. A hearing was held before officers and members of System Federation No. 9, and the plaintiff's seniority date of September 5, 1923, was affirmed by that group and retained on the union records.

In 1950 plaintiff received a letter from John R. Drenten, secretary and treasurer of the System and one of the defendants herein, to the effect that 3 members of the System had again requested a review of plaintiff's seniority status; the 3 persons making the request being Lester Minderhout, Ray Packer and Manuel Martell, also defendants herein. Subsequently and on March 8, 1950, plaintiff received another letter from John R. Drenten notifying him that at a joint meeting of the executive board and the joint protective board held on February 25, 1950, plaintiff's seniority date had been determined to be September 15, 1927. In the letter, Drenten stated that the plaintiff had received notice of the February 25th meeting, a statement denied by plaintiff. The railroad company was advised of the determination of the union hearing held on February 25, 1950, and the company placed defendants Minderhout, Packer and Martell ahead of plaintiff on its seniority roster. As a result, plaintiff was removed from his first-shift employment and placed on the second shift.

Plaintiff then filed a bill of complaint alleging the facts, as above stated, and claiming that the determination of his seniority date as September 15, 1927, was brought about through the conspiracy of the defendants to fraudulently take from him an established seniority position. He further alleged that as a result of the wrongful conspiracy of the defendants, he was relegated to the second shift of

employment, lost the opportunity for overtime employment, and became subject to the possibility of losing his employment if certain contemplated reductions in personnel occurred. Plaintiff concluded his bill of complaint by praying for a temporary injunction restraining defendants from enforcing or attempting to enforce the removal of the plaintiff from his position in the seniority rolls and from his position on the first shift of employment.

He further prayed that upon hearing, a mandatory injunction issue directing the defendants to withdraw their void order and notify the Chesapeake & Ohio Railway Company that the plaintiff should be returned to his position on the first shift and to his proper position in the seniority roster. Further, that the defendants be restrained from attempting to enforce their so-called ruling of February 25, 1950, and from posting a seniority roster showing defendants Minderhout, Packer and Martell above the plaintiff.

Lastly, he asked for an accounting to determine the amount of money lost to the plaintiff as a result of his transfer from the first shift to the second shift and that a judgment issue against the defendants for such sum.

Defendants entered a special appearance and moved to dismiss the bill of complaint giving 4 reasons. First, that the court had no jurisdiction over the subject matter for the reason that the national railroad adjustment board had exclusive jurisdiction over such disputes under the provisions of the railway labor act (45 USCA, § 151 *et seq.*); second, that the relief sought was, in effect, a request for specific performance of a contract of employment; third, that the Chesapeake & Ohio Railway Company was a proper party defendant and that failure to make it a party was fatal to plaintiff's cause, and, fourth, that the bill of complaint failed to state a

cause of action for the reason that the collective bargaining agreement upon which plaintiff bases his claim for relief affirmatively shows that under the facts alleged in the bill of complaint plaintiff is not entitled to relief.

Upon hearing, the trial court denied plaintiff's request for a temporary injunction and likewise denied defendants' motion to dismiss. Defendants promptly filed an answer to the bill of complaint and pleaded, as special defenses, the matters set forth in their motion to dismiss. Thereafter upon leave of this Court, defendants took this appeal from the order of the circuit judge denying their motion to dismiss.

The principal issue presented on this appeal is whether or not the circuit court had jurisdiction to consider the subject matter of the controversy. It is plaintiff's contention that he seeks only to reestablish his seniority status on the roster maintained by the union. It is his position that his seniority status is a valuable right,

"The seniority provisions of a collective agreement are enforceable, and an employee's seniority rights, duly fixed by the contract between the employer and the collective bargaining agent, are valuable property rights which belong exclusively to the employee, and of which he may not be unlawfully deprived." 56 CJS, p 204, § 28(41)e.

and that by fraudulently changing the records of System Federation No. 9, defendants have wrongfully taken such rights from the plaintiff thus invoking the equitable jurisdiction of the circuit court.

"Seniority rights, when recognized and guaranteed by contract between the employer and the union, inure to the benefit of the individual employees, and the employee may invoke the equity jurisdiction of the courts if full resort to union tribunals has proved

unavailing because of unreasonable construction of union laws or want of good faith on the part of such officers." *Lockwood* v. *Chitwood,* 185 Okla 44 (89 P 2d 951).

Defendants, on the other hand, contend that plaintiff, in claiming certain rights under the provisions of the collective-bargaining agreement, seeks an interpretation of that contract as applied to his seniority status and is, therefore, required to submit the dispute to the railroad adjustment board as established by the railway labor act. It is their further claim that that act gives the railroad adjustment board exclusive jurisdiction over all railroad disputes concerning the interpretation and application of collective bargaining agreements in the railroad industry. In support of their position they quote:

"The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in *Order of Railway Conductors of America* v. *Pitney,* 326 US 561 (66 S Ct 322, 90 L ed 318). There we held, in a case remarkably similar to the one before us now, that the Federal district court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and 2 employee-accredited bargaining agents.' * * * Our ground for this holding was that the court 'should not have interpreted the contracts' but should have left this question for determination by the adjustment board, a congressionally designated agency peculiarly competent in this field. 326 US at 567, 568. This reasoning equally supports a denial of power in any court—State as well as Federal—to invade the jurisdiction conferred on the adjustment board by the railway labor act.

"Our holding here is not inconsistent with our holding in *Moore* v. *Illinois Central R. Co.,* 312 US 630 (61 S Ct 754, 85 L ed 1089). Moore was discharged by the railroad. He could have challenged

the validity of his discharge before the board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the railway labor act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the board.

"We hold that the jurisdiction of the board to adjust grievances and disputes of the type here involved is exclusive. The holding of the *Moore Case* does not conflict with this decision, and no contrary inference should be drawn from any language in the *Moore* opinion. It was error for the New York courts to uphold a declaratory judgment interpreting these collective-bargaining agreements." *Slocum* v. *Delaware, L. & W. R. Co.,* 339 US 239 (70 S Ct 577, 94 L ed 795).

Before the court's jurisdiction of the subject matter can be determined, it becomes necessary that we find the ultimate and real objective of the plaintiff. Does he seek to protect an established right that is endangered by the wrongful acts of the defendants or, on the other hand, is he asking for an interpretation of the collective-bargaining agreement in order to establish claimed rights? In his bill of complaint, it is claimed that he seeks to maintain seniority records which have been in existence for a number of years and which are of value and yet in his brief he insists that consideration of his seniority rights is not proper on a motion to dismiss

for the reason that such discussion goes to the merits of the cause. If questions involving the seniority roster do go to the merits of the cause, then it would seem that he seeks an interpretation of the contract which establishes seniority and the rights and privileges arising therefrom.

The contract itself does not delegate to System Federation No. 9 the right to establish seniority dates. Rather, it establishes the method of computing seniority and defines the employee's rights in relation to existing seniority. While it is true that the union has its own records, those records are in fact simply the opinion of that group as to the period of seniority to which each member is entitled. Such records would, in the very nature of the circumstances, have an influence upon the employer because, as a general rule, a railroad company has little personal interest in such matters. *Ryan* v. *New York Central R. Co.*, 267 Mich 202. The employee himself, however, does have a very definite interest in his seniority status and neither the records kept by System No. 9 nor the records kept by the railroad company could determine his seniority period. In the event of a dispute, seniority status could be established only by a tribunal having jurisdiction to determine that dispute.

In the instant situation the defendant members of the System may have had wrongful or improper intentions in changing their records, but in making that change they have accomplished nothing as a matter of law. At most, they have expressed their opinion as to the period of time in which plaintiff has served in his present position. Plaintiff contends that the System has not only made a wrongful determination of his rights under the contract but that it has likewise followed an improper procedure in arriving at that determination in that it failed to give him adequate notice of hearing,

and thereby denied him the opportunity to be heard in his behalf. But if he had appeared and had been successful in defending his position at the meeting of the System officials, he would have established no enforceable or legal right. The most that he could have accomplished would have been to maintain the then status of the System's records, but he would not have had an actual or final determination of his legal right to a certain position in the employment of the Chesapeake & Ohio Railway Company based upon seniority. His position on the roster could still be challenged by a fellow employee, by the employer or by the System itself. The acts of the System, its officers and members, whether taken in bad faith or not, may have caused the plaintiff inconvenience but they have taken no legal right or property from the plaintiff because the System does not have the right or power to accomplish such a result.

We conclude, therefore, that the real and only objective that plaintiff has in this litigation is a determination of his right to a certain type of employment as provided in the collective bargaining agreement. This being true, it follows that he should seek relief before the tribunal established by law to hear such disputes.

No question is here raised as to the validity of the contract, the issue present in *Steele* v. *Louisville & N. R. Co.,* 323 US 192 (65 S Ct 226, 89 L ed 173), nor are we concerned with wrongful discharge of an employee, an issue with which the court was concerned in *Moore* v. *Illinois Central R. Co.,* 312 US 630 (61 S Ct 754, 85 L ed 1089). In either of those situations, judicial intervention has been approved.

Plaintiff argues, however, that the railroad adjustment board will not hear the complaint of an individual member of a union. It is his position that

the act was intended to provide a tribunal and procedure for the settlement of disputes as between a union and the employing carrier. This, we do not believe to be the rule.

"It is suggested that appellant has no administrative remedies because the union neither would or could present the appellant's case before the national railway adjustment board. There is no merit in the suggestion because the appellant could have pursued the administrative remedies either in person or by his attorney." *Davis* v. *Southern R. Co.,* 256 Ala 202 (54 So2d 308).

"Petitioner urges that the statute, both by its terms and by its purpose, confers upon the collective agent the same exclusive power to deal with grievances, whether by negotiation and contract, or by presentation to the board when agreement fails, as is given with respect to major disputes. And the aggrieved employee's rights of individual action are limited to rights of hearing before the union and possibly also by the carrier.

"We think that such a view of the statute's effects, insofar as it would deprive the aggrieved employee of effective voice in any settlement and of individual hearing before the board, would be contrary to the clear import of its provisions and to its policy. * * *

"The act's provisions do not require such a construction. On the contrary they appear expressly to preclude it. The proviso to section 2, Fourth in terms reverses the right of 'an employee *individually*' to confer with management; and section 3, First (j) not only requires the board to give 'due notice of all hearings to *the employee* * * * involved in any dispute *submitted,*' * * * but provides for 'parties' to be heard 'either *in person,* by counsel, or by other representatives, as they may respectively elect.'

"These provisions would be inapposite if the collective agent, normally a labor union and an unincorporated association, exclusively were contemplated. Such organizations do not and cannot ap-

pear and be heard 'in person.' Nor would the provision for notice 'to *the employee* \* \* \* involved in any dispute' be either appropriate or necessary. If only the collective representative were given rights of submission, notice, appearance and representation, language more aptly designed so to limit those rights was readily available and was essential for the purpose." *Elgin, Joliet & E. R. Co.* v. *Burley,* 325 US 711, 733 (65 S Ct 1282, 89 L ed 1886), (adhered to on rehearing, 327 US 661 [66 S Ct 721, 90 L ed 928]).

The railroad adjustment board, having jurisdiction of the matters involved herein, neither a State nor Federal court can invade that jurisdiction. *Slocum* v. *Delaware, L. & W. R. Co., supra.*

We conclude therefore, that plaintiff has an exclusive and adequate legal remedy and that his bill of complaint does not state a cause of action in chancery. The motion to dismiss should have been granted. The decision of the circuit court denying such motion is reversed, costs to appellants.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.