EMMONS *v.* GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS.

1. EQUITY—JURISDICTION—MOTION TO DISMISS—PLEADING.
    The question of the jurisdiction of a chancery court to pass upon question sought to be adjudicated may properly be raised by, and determined at hearing on, a new motion to dismiss filed in accordance with such claim as set up in answer, but heard in advance of trial, as permitted by court rule (Court Rule No 23, § 7 [1945]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 19 Am Jur, Equity § 306.
[2, 3] 31 Am Jur, Labor § 128.
[4] 31 Am Jur, Labor § 112.
[5] 31 Am Jur, Labor § 114.
[6] 14 Am Jur, Costs § 92.

2. Labor Relations—Railway Labor Act—Carriers—Collective Agreements—Grievances—Courts.

The purpose of the Federal railway labor act was to avoid any interruption to commerce or to the operation of any carrier and extended both to disputes concerning the making of collective agreements and to grievances arising under existing agreements by providing administrative methods of settling disputes by first requiring negotiation between the carriers and bargaining representatives of the employees and setting up machinery for conciliation, mediation, arbitration and adjustment of disputes and denies the power of a court to invade the jurisdiction conferred by congress exclusively upon the railroad adjustment board (45 USCA, § 151 *et seq.*).

3. Same—Carriers—Seniority Rights.

A brotherhood which has an agreement with an employing carrier by which seniority rights were created may, by agreement with the carrier, subsequently modify or destroy such rights in the interest of all the members (45 USCA, § 151 *et seq.*).

4. Same—Seniority Rights—Contracts Between Union and Carrier.

Seniority rights of a member of a union are not inherent in a contract of employment, where created pursuant to an agreement between employer and the union, as the bargaining agent of the employees; hence, such rights are subject to the terms and conditions of the contract.

5. Same—Carriers—Bargaining Agents of Employees—Contracts—Seniority Rights—Record.

Claim that agreements between the defendant carrier and the bargaining agents of its employees vested the general committee of adjustment of one of the unions of the employees with power to modify the agreements as to seniority or in other respects *held,* not supported by record.

6. Costs—Briefs.

Costs are awarded to the only appellee who filed a brief, upon affirmance of the decree, where there were several appellees.

Appeal from Kent; Souter (Dale), J. Submitted June 10, 1954. (Docket No. 30, Calendar No. 46,070.) Decided September 8, 1954.

Bill by Milo A. Emmons and 85 others against Grand International Brotherhood of Locomotive Engineers, a corporation, Brotherhood of Locomotive Firemen and Enginemen, a corporation, and Chesapeake & Ohio Railway Company, a corporation, for specific performance of a resolution and protection of seniority rights. Bill dismissed. Plaintiffs appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiffs.

*Williams R. Althans* and *Allan F. Schmalzreidt* (*Paul O. Strawhecker,* of counsel), for defendant Chesapeake & Ohio Railway Company.

CARR, J. The plaintiffs in this cause, 86 in number, are employees of the defendant Chesapeake & Ohio Railway Company. Some of them are locomotive engineers, while others are firemen, including some who have been examined as engineers. For the purposes of this case the defendant company may be regarded as the successor of the Pere Marquette Railway Company. The defendant Grand International Brotherhood of Locomotive Engineers is a railroad brotherhood, its membership consisting of locomotive engineers and firemen some of whom are plaintiffs here. The third defendant is likewise a railroad brotherhood with a membership consisting of engineers and firemen some of whom are likewise plaintiffs. All of said plaintiffs are employed in their respective capacities in what is known as the "Grand Rapids district" of the Chesapeake & Ohio.

The present suit in equity was brought for the purpose of establishing and protecting rights of seniority claimed by plaintiffs for themselves and other engineers and firemen similarly situated. On behalf of each of the defendant brotherhoods a motion was

made to quash the service of process for the alleged reason that the individual served, in each instance, was not authorized to accept service. The defendant railway company filed an answer to the bill of complaint admitting some of the averments thereof, denying others, and further asserting that the court was without jurisdiction to grant the relief sought. It was specifically claimed that plaintiffs' rights were governed by the railway labor act, 45 USCA, §§ 151 to 188, inclusive, and that plaintiffs who are engineers are represented by the defendant Brotherhood of Locomotive Engineers, while those who are firemen are represented by the Brotherhood of Locomotive Firemen and Enginemen, which organizations have been duly certified as representatives for their respective crafts or classes.

The answer was filed February 11, 1952. Subsequently, under date of October 3, 1952, a motion to dismiss, following the averments in the answer, was filed by the Chesapeake & Ohio Railway Company, which motion was duly noticed for hearing. Testimony was introduced in connection with the argument, and the trial court, on the basis of the pleadings and the proofs, granted the motion. A decree was entered accordingly. On the theory that such decree disposed of the controversy no action was taken on the motions to quash service submitted by the other defendants. Plaintiffs have appealed, claiming that the trial court erred in decreeing the dismissal of the suit.

It appears from the pleadings in the case that prior to the year 1908 employment of engineers on that portion of the Pere Marquette system between Plymouth and Detroit, including the Detroit yard, was governed by various agreements, none of which is material in the instant controversy. In the year mentioned there were only 6 jobs for locomotive engineers in the territory indicated. In that year the

general committee of adjustment of the defendant Brotherhood of Locomotive Engineers adopted a resolution to the effect that the track between Plymouth and Detroit, including the Detroit yard, should be considered as "joint track" for the Saginaw district and the Grand Rapids district for the purpose of fixing the rights of engineers employed in said districts, engineers from each to be entitled to 50% of such employment. Whether recognition was given to such resolution seems to be in dispute but under date of February 1, 1910, the Pere Marquette Railway Company and the defendant Brotherhood of Locomotive Engineers entered into a collective-bargaining agreement recognizing the Detroit yard as joint territory, and placing it on an equal basis for the employment of engineers from the Grand Rapids district and the Saginaw district. This situation has continued by virtue of subsequent agreements between the Pere Marquette Railway Company, and its successor, and the defendant brotherhoods. It may be noted in this connection that in 1950 section 4 of rule 32 of the agreement with the Brotherhood of Locomotive Engineers was modified to provide that persons employed in engine service in the Saginaw district on and after May 15, 1950, should have no rights as engineers on assignments to work entirely within the Detroit terminal. The corresponding rule in the agreement between the railway company and the other brotherhood has not been amended since 1931.

Because of business conditions the number of jobs available for locomotive engineers in the Detroit yard area has greatly increased during the period since 1910. For a like reason the number of locomotive engineers and firemen on the payroll of the railway company in the Grand Rapids district has become greater than the corresponding number in the Saginaw district. This operated, it is claimed,

in giving an unfair advantage in the matter of seniority to engineers coming from the latter district.

On the 26th of March 1942, the general committee on adjustment of the Brotherhood of Locomotive Engineers adopted the following resolution:

"A bulletin will be placed at all terminals on the Saginaw seniority district advertising for bids for 23 engineers on the Saginaw district roster to transfer to the Grand Rapids seniority district and be dovetailed into the Grand Rapids seniority roster, in accordance with their seniority date on the Saginaw district seniority roster. Those bidding for transfer will forfeit all seniority rights on the Saginaw district. The bulletin is to be for a period of 60 days. The 23 oldest engineers making application will be transferred to the Grand Rapids seniority district. After this transfer is made, other engineers on the Saginaw district will not have rights in the Detroit switching area."

The employer was, it is claimed, notified of the adoption of said resolution but failed to take action thereon. In its answer to the bill of complaint defendant railway company asserted that it could not, and cannot, enter into a contract with the Brotherhood of Locomotive Engineers, embodying a provision of the nature contemplated by the resolution, without violating its contract with the Brotherhood of Locomotive Firemen and Enginemen which has opposed the making of any such change with reference to seniority rights.

In June, 1945, the general committee of adjustment of the Brotherhood of Locomotive Engineers adopted another resolution, containing the following provision:

"When all Saginaw seniority district engineers holding seniority rights in Detroit switching area prior to this date, are exhausted, said Detroit switch-

ing area will be manned exclusively by Grand Rapids seniority engineers."

Notice of this resolution was given to the Pere Marquette Railway Company but without accomplishing the purpose sought. In their bill of complaint, which was filed January 10, 1952, plaintiffs, after setting up at some length the situation that they claimed existed, and the efforts made to remedy it, asked that the court decree specific performance of the resolution of the general committee of adjustment of the Brotherhood of Locomotive Engineers, adopted March 26, 1942, as of that date, and for a mandatory injunction requiring the Chesapeake & Ohio to grant plaintiffs and other employees in the same classes the benefits contemplated by said resolution. An injunction against the defendant Brotherhood of Locomotive Firemen and Enginemen to prevent interference thereby with the application and enforcement of said resolution was also asked, together with a decree granting exclusive seniority rights in the Detroit switching area to plaintiffs and other locomotive engineers and firemen in the Grand Rapids district.

On behalf of appellants it is argued that the motion to dismiss the case was made too late to entitle it to consideration. Attention is called to Court Rule No 18 (1945), and the decision of this Court in *Schwartz* v. *American Petro-Chemical Co.*, 297 Mich 288, is cited. In said case the motion to dismiss was made over 2 years after defendants had filed their answer, and nearly 4 years after the filing of the bill of complaint. It asserted that said bill was multifarious. Obviously the situation in the case at bar is not analogous. The answer of the Chesapeake & Ohio alleged the lack of jurisdiction on the part of the court to grant the relief sought by the plaintiffs. Dismissal of the bill of complaint was specifically

asked.  The motion to dismiss, incorporated in the answer, was subsequently brought on for hearing in advance of trial, as permitted by Court Rule No 23, § 7 (1945).  The fact that in form a new motion was filed in accordance with the claim set up in the answer does not alter the practical situation.  The question of jurisdiction was involved, and the trial court quite properly considered and determined the matter.  See *Bischoff* v. *County of Wayne*, 320 Mich 376, and prior decisions there cited.  Appellants' contention that the question of jurisdiction should not have been considered by the trial court, because raised too late, is without merit.

It is the claim of the defendant railway company that the fixing of seniority rights is a matter for collective bargaining between the employer and the brotherhoods representing the employees.  Attention is directed to certain provisions of the railway labor act, 45 USCA, § 151 *et seq.*  The following provisions are of significant interest:

"§ 152.  *  *  *

"Consideration of disputes by representatives

"Second.  All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.  *  *  *

"Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden.  *  *  *

"Fourth.  Employees shall have the right to organize and bargain collectively through representatives of their own choosing.  The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.  No carrier,

its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, * * * Provided, That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization. * * *

Conference of representatives; time; place; private agreements.

"Sixth. In case of a dispute between a carrier or carriers and its or their employees, arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, it shall be the duty of the designated representative or representatives of such carrier or carriers and of such employees, within 10 days after the receipt of notice of a desire on the part of either party to confer in respect to such dispute, to specify a time and place at which such conference shall be held: Provided, (1) that the place so specified shall be situated upon the line of the carrier involved or as otherwise mutually agreed upon; and (2) that the time so specified shall allow the designated conferees reasonable opportunity to reach such place of conference, but shall not exceed 20 days from the receipt of such notice: And provided further, that nothing in this chapter shall be construed to supersede the provisions of any agreement

(as to conferences) then in effect between the parties."

"§ 156. Procedure in changing rates of pay, rules, and working conditions

"Carriers and representatives of the employees shall give at least 30 days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within 10 days after the receipt of said notice, and said time shall be within the 30 days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the mediation board have been requested by either party, or said board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the mediation board, unless a period of 10 days has elapsed after termination of conferences without request for or proffer of the services of the mediation board."

It is the position of the appellants that they are seeking in this action to enforce rights secured to them by the contracts between the defendant carrier and the brotherhoods, the bargaining representatives for the plaintiffs. In view of such claim the decision in *Slocum* v. *Delaware, L. & W. R. Co.*, 339 US 239 (70 S Ct 577, 94 L ed 795) is in point. There an action was brought for a declaratory judgment in the State court under a statute of New York. The court of appeals sustained jurisdiction. The United States supreme court reversed. In reaching such conclusion, it was said (pp 242–244) :

·· "The first declared purpose of the railway labor act is 'To avoid any interruption to commerce or to the operation of any carrier engaged therein.' 48 Stat 1186 (§ 2), 45 USC, § 151a. This purpose extends both to disputes concerning the making of collective agreements and to grievances arising under existing agreements. See *Elgin, J. & E. R. Co.* v. *Burley,* 325 US 711, 722 (65 S Ct 1282, 89 L ed 1886). The plan of the act is to provide administrative methods for settling disputes before they reach acute stages that might be provocative of strikes. Carriers are therefore required to negotiate with bargaining representatives of the employees. *Virginian R. Co.* v. *System Federation,* 300 US 515, 547, 548 (57 S Ct 592, 81 L ed 789). The act also sets up machinery for conciliation, mediation, arbitration and adjustment of disputes, to be invoked if negotiations fail.

"In this case the dispute concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties. This type of grievance has long been considered a potent cause of friction leading to strikes. It was to prevent such friction that the 1926 act provided for creation of various adjustment boards by voluntary agreements between carriers and workers. 44 Stat 578. But this voluntary machinery proved unsatisfactory, and in 1934 Congress, with the support of both unions and railroads, passed an amendment which directly created a national adjustment board composed of representatives of railroads and unions. 48 Stat 1189–1193. The act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The adjustment board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and var-

ied experiences have added to the board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems.

"The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in *Order of Conductors* v. *Pitney,* 326 US 561 (66 S Ct 322, 90 L ed 318). There we held, in a case remarkably similar to the one before us now, that the Federal district court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and 2 employee accredited bargaining agents.' * * * Our ground for this holding was that the court 'should not have interpreted the contracts' but should have left this question for determination by the adjustment board, a congressionally designated agency peculiarly competent in this field. 326 US at 567, 568. This reasoning equally supports a denial of power in any court—State as well as Federal—to invade the jurisdiction conferred on the adjustment board by the railway labor act."

Of like import is *Order of Railway Conductors of America* v. *Southern R. Co.,* 339 US 255 (70 S Ct 585, 94 L ed 811). In *Hartley* v. *Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees,* 283 Mich 201, plaintiff sued defendant association for damages for breach of contract and for loss of seniority rights. This Court affirmed a judgment in defendant's favor, saying with reference to plaintiff's alleged cause of action (p 206):

"The seniority rights acquired by her did not arise by virtue of her contract of employment with her employer, but existed by reason of the agreement of 1921 between the railway and the brotherhood. *Ry-*

*an* v. *New York Central Railroad Co.*, 267 Mich 202. This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members."

In *Lewellyn* v. *Fleming* (CCA), 154 F2d 211, the circuit court of appeals of the 10th circuit considered the effect of a collective bargaining agreement, between the employer and the representative of the class of employees to which the plaintiff belonged, on prior seniority rights which the plaintiff sought to enforce. After giving consideration to pertinent provisions of the railway labor act and pointing out that a carrier is required to bargain with the chosen representative of the craft to the exclusion of individual members, it was said (pp 213, 214):

"Here the Order of Railway Conductors was the statutory bargaining agent, and as such was authorized to enter into a contract with the railroad company concerning wages, hours and conditions of employment, and this undoubtedly included the authority to prospectively contract with reference to seniority rights of the members of the craft, whether members of the union or not. This is not an individual grievance which falls outside the collective interest of the craft, and therefore outside of the scope of the collective bargaining authority of the statutory representative. *Cf. Elgin, J. & E. R. Co.* v. *Burley,* 325 US 711 (65 S Ct 1282, 89 L ed 1886).

"The act clothes the bargaining representative with 'powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents.' In the exercise of its legislative functions, the statutory representative is charged with the public interest contemplated by the purposes of the act, and is constitutionally bound to protect equally the interests of the members of the craft it is authorized to represent. But the duty to act fairly and nondiscriminatorily does not bar the statutory representative 'from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority * * * are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit.' *Steele* v. *Louisville & N. R. Co.*, 323 US 192, 202, 203 (65 S Ct 226, 232, 89 L ed 173, 183)."

See, also, as to the duty of railroad company to enter into collective bargaining with the duly authorized representative of employees under the provisions of the railway labor act, *Brotherhood of Railway & Steamship Clerks* v. *Atlantic Coast Line R. Co.*, 201 F2d 36.

In *Zdero* v. *Briggs Manufacturing Company*, 338 Mich 549, plaintiff sought by suit in equity to compel his reinstatement in his employment with full seniority rights, together with specific performance of an employment contract. This Court affirmed a decree denying relief, saying in part (p 553):

"Seniority rights are not inherent, but exist solely by virtue of a contract, either between the employer and his employees or a union acting in their behalf. These rights are subject to the terms and conditions of the contract, and in this instance their benefits

inure through the union to its members. See *Ryan*
v. *New York Central Railroad Co.*, 267 Mich 202."

In the case at bar plaintiffs assert no contractual
relationship between themselves and the defendant
railway company with reference to the matter of
seniority. In consequence, if their purpose in this
suit is to enforce contractual rights, as they claim,
they must of necessity rely on the agreements here-
tofore made from time to time, and continued in
effect, between the employer and the bargaining
agencies representing plaintiffs. In view of this situ-
ation the holding in *Hippensteel* v. *System Federa-
tion*, 337 Mich 251, is significant. It was there held
that plaintiff had an adequate remedy under the rail-
way labor act, and that the courts were without
jurisdiction to encroach on the powers of the railroad
adjustment board created and functioning thereun-
der. In determining the purpose of the suit, in which
plaintiff sought equitable relief by way of injunction,
it was said (p 259) :

"We conclude, therefore, that the real and only
objective that plaintiff has in this litigation is a de-
termination of his right to a certain type of employ-
ment as provided in the collective bargaining agree-
ment. This being true, it follows that he should
seek relief before the tribunal established by law to
hear such disputes."

Seniority rights of the plaintiffs herein must nec-
essarily depend on the contract between the defend-
ant railway company and the bargaining represent-
atives of plaintiffs and other employees in like situ-
ations. The interpretation of such agreements is
subject to the provisions of the railway labor act,
under which the jurisdiction established is exclusive.
If, therefore, the rights that plaintiffs seek to have
enforced are claimed to exist by virtue of such a con-
tract, or such contracts, the trial court was right in

denying relief. On the other hand if plaintiffs, as appellee railway company insists, are seeking to compel the defendants to enter into a new or modified contract containing the provisions with reference to seniority that plaintiffs desire, it is equally clear that equity cannot interfere. We find no basis in the record for any possible claim that agreements between the carrier and the bargaining representatives of the employees vested the general committee of adjustment of the Brotherhood of Locomotive Engineers with the power to modify them as to seniority or in other respects. Any such provision, even if clearly expressed, would be inconsistent with the railway labor act which clearly contemplates a determination of such matters by collective bargaining and makes no provision for any delegation of authority.

The decree is affirmed, with costs to defendant Chesapeake & Ohio Railway Company. No brief has been filed on behalf of the other defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.