CRAIG v CITY OF DETROIT POLICE DEPARTMENT

Docket No. 55334. Argued November 7, 1974 (Calendar No. 16).—
Decided July 8, 1976.

The Department of Treasury issued jeopardy tax assessments and
a warrant of levy under the Use Tax and Income Tax Acts
against plaintiffs, Maurice C. Craig and Roberta Killebrew. On
March 9, 1972, the warrant of levy was served on four banks
and on the Detroit Police Department then in possession of
money which it had seized in a search of plaintiffs' property. As
a result of the levy the Treasury Department acquired posses-
sion of $5,045.86. On March 11, notices of assessment were sent
by certified mail to plaintiffs. Plaintiffs commenced an action in
the Wayne Circuit Court, Charles S. Farmer, J., requesting that
the Treasury Department be ordered to show cause why the
confiscated funds should not be returned. The Treasury Depart-
ment's motion for accelerated judgment on the grounds that
the circuit court lacked jurisdiction over the subject matter of
the complaint was denied and the funds ordered returned on
the grounds that defendants had not followed the statutory
requirements and therefore had violated plaintiffs' right to due
process of law. The Court of Appeals, Quinn, P. J., and V. J.
Brennan and Bashara, JJ., reversed (Docket No. 16007). Plain-
tiffs appeal. *Held:*

1. The jeopardy assessment procedure permits simultaneous
demand for taxes claimed owing and seizure of the taxpayer's
property to satisfy the demand. The potential for abuse or for
injury due to mistake is obvious. The statutes permit the
taxpayer to present evidence that there is no default in the
payment of any tax but the Treasury Department has not
promulgated regulations governing procedure by which the
taxpayer might give security that any tax found due will be
paid.

2. Absent a statutory provision for a prompt post-seizure
hearing on the factual basis for the assessment, the circuit

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 42 Am Jur 2d, Injunctions § 270 *et seq.*
[5] 2 Am Jur 2d, Administrative Law §§ 327–329.
[6] 2 Am Jur 2d, Administrative Law § 696.

court of the county of the residence of the taxpayer provides a logical forum for such a hearing.

3. The state cannot lay valid claim to statutory protection from injunctive intervention in the jeopardy assessment procedure if the circuit court finds that there is no factual basis for the assessment and equity jurisdiction otherwise exists.

4. On remand the issues before the circuit court are whether plaintiff's remedy in a refund suit is adequate and whether the tax assessment has a basis in fact. The question is whether the facts in the Treasury Department's possession demonstrate probable cause to support the assessment.

Reversed and remanded to circuit court for further proceedings.

Justice Coleman dissented on the ground that plaintiffs have not exhausted their statutory remedies nor did they state a claim which warranted circuit court intervention. They claim that the jeopardy assessment was unjust and incorrect, but there is no claim that the taxation statute is unconstitutional or that the statutory procedure is unconstitutional as applied to the plaintiffs. They should pursue their administrative remedies before there is a judicial review of the issues involved.

49 Mich App 599; 212 NW2d 235 (1973) reversed.

OPINION OF THE COURT

1. TAXATION—JEOPARDY ASSESSMENTS—INJUNCTIVE RELIEF.

A taxpayer may obtain injunctive relief against a jeopardy tax assessment upon a finding that (1) the taxpayer's remedy in a refund suit is inadequate to repair any injury that might be caused by an erroneous assessment or collection of an asserted tax liability and (2) the tax assessment has no basis in fact.

2. TAXATION—JEOPARDY ASSESSMENTS—INJUNCTIVE RELIEF.

The state cannot lay valid claim to acting under or pursuant to a tax statute in a summary seizure under a jeopardy tax assessment proceeding if there is no factual basis for the assessment (MCL 206.422[2], 600.2920[1] [a]; MSA 7.557[1422] [2], 27A.2920[1] [a]).

3. TAXATION—JEOPARDY ASSESSMENTS—INJUNCTIVE RELIEF.

Injunctive relief may issue against summary seizure under a jeopardy tax assessment in spite of statutory prohibitions on the issuance of injunctions to stay proceedings for the assessment and collection of taxes and absent a statutory provision for a post-seizure hearing into the factual basis for the assess-

ment where the information available to the government does not demonstrate probable cause for the assessment (MCL 206.422[2], 600.2920[1][a]; MSA 7.557[1422][2], 27A.2920[1][a]).

DISSENTING OPINION

COLEMAN, J.

4. TAXATION—JEOPARDY ASSESSMENTS—INJUNCTIVE RELIEF.

*A taxpayer may not obtain injunctive relief against a jeopardy tax assessment where he did not exhaust his statutory administrative remedies and did not state a claim to warrant intervention by a court.*

5. ADMINISTRATIVE LAW—COURTS—REVIEW.

*Courts will not interfere with the administrative process when the agency is authorized to decide the question presented.*

6. ADMINISTRATIVE LAW—COURTS—INJUNCTIVE RELIEF—CONSTITUTIONAL LAW.

*Courts can grant injunctive relief and determine a statute's constitutionality for a plaintiff who has not exhausted administrative remedies where an irreparable injury will result from the acts of public officials in attempting to proceed under an invalid statute.*

*Cornelius Pitts* and *Paul D. Muller,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Thomas J. Giachino,* Assistants Attorney General, for defendant Department of Treasury.

FITZGERALD, J. The issues on appeal are whether the circuit court of the county of a taxpayer's residence has jurisdiction to entertain an action alleging that property has been illegally seized pursuant to the state jeopardy assessment procedures and, if so, what relief is obtainable by the taxpayer.

I

On March 8, 1972, the Michigan Department of Treasury prepared jeopardy tax assessments and a warrant of levy in the amount of $12,985.82 against plaintiffs. The jeopardy assessments and warrant of levy were issued under the authority of the Use Tax Act[1] and the Income Tax Act.[2] The jeopardy assessments claimed taxes due for the completed tax years 1967 through 1971 and additionally listed taxes due for the then-current 1972 taxable period.

On March 9, the warrant of levy was served on four banks thought by the Treasury to hold plaintiffs' funds and on the Detroit Police Department, then in possession of $2,560 which it had seized pursuant to a search warrant. As a result of the levy, Treasury acquired possession of $5,045.86. On March 11, the notices of assessment were sent by certified mail to plaintiffs.

On June 5, 1972, plaintiffs commenced an action in the Wayne Circuit Court requesting that Treasury be ordered to show cause why the confiscated funds should not be returned. In response, Treasury moved for accelerated judgment on the grounds that the circuit court lacked jurisdiction over the subject matter of the complaint.

On November 21, 1972, the circuit judge ruled that the circuit court possessed jurisdiction and issued a written opinion denying Treasury's motion for accelerated judgment. The court ordered the funds returned based on its finding that defendants had not followed the statutory requirements and therefore had violated plaintiffs' right to due process of law.

---

[1] MCLA 205.110; MSA 7.555(20).

[2] MCLA 206.423(2); MSA 7.557(1423)(2).

The Court of Appeals reversed at 49 Mich App 599; 212 NW2d 235 (1973), holding that plaintiffs had failed to exhaust their administrative remedies and that the Wayne Circuit Court had no jurisdiction, absent an unconstitutional statute. We reverse the Court of Appeals and remand this matter to the circuit court for further proceedings.

## II

Normally, it is only after notice to the taxpayer and an opportunity for a departmental hearing that deficiencies, interest and penalties may be collected.[3] The jeopardy assessment procedure, however, permits simultaneous demand for taxes claimed owing and seizure of the taxpayer's property to satisfy this demand. While the language of the jeopardy provisions of the Use Tax Act and the Income Tax Act vary slightly, the procedures are essentially the same. Treasury may make a finding that collection of taxes is in jeopardy due to some act of the taxpayer. The taxpayer is given notice of this finding and a demand for payment is made either personally or by certified mail addressed to the last known address of the taxpayer.[4] Simultaneous with the mailing of notice and demand, a warrant may immediately issue for seizure of the taxpayer's property. The statutes do not provide for any prompt post-seizure hearing to determine whether the assessment for taxes owing has any basis in fact.[5] There is no provision for taxpayer

[3] MCLA 205.101; MSA 7.555(11) (Use Tax). MCLA 206.421(2); MSA 7.557(1421)(2) (Income Tax).

[4] MCLA 205.100; MSA 7.555(10) (Use Tax). MCLA 206.422(1); MSA 7.557(1422)(1) (Income Tax).

[5] The hearings provided under MCLA 205.101 and 206.421(2) do not apply because under these sections the tax is levied upon written decision of the department following the hearing. Pursuant to MCLA 205.7; MSA 7.657(7), the taxpayer may appeal to the State Board of

challenge of the departmental finding that an act tending to jeopardize collection has been or is about to be committed. Yet, it is this determination of jeopardy which sets into motion the extraordinary procedure permitting simultaneous demand and seizure. The potential for abuse or for injury due to mistake is obvious.

The statutes do permit the taxpayer to present evidence to the department that there is no default in the payment of any tax and that any tax found due will be paid. MCLA 206.423(2) refers to regulations to be promulgated by the department governing procedure by which the taxpayer might give such security. No such regulations have come forth from the department to date.

III

Because of the statutory deficiencies above noted, we disagree with the Court of Appeals which held that the Wayne Circuit Court had no jurisdiction of this matter because review had "otherwise been provided for by law".[6] The statutes make no provision for a prompt post-seizure hearing into the factual basis for the assessment. Absent such a provision, the circuit court of the county of the residence of the taxpayer provides a logical forum for such a hearing. As will be dis-

Tax Appeals and is entitled to a hearing within 60 days of the filing of Treasury's answer to the taxpayer's statement of appeal. However, even if the board were to comply in every instance with the timetable set forth in the statute (see Sears v Department of Treasury, 57 Mich App 218; 226 NW2d 63 [1974]), a decision might not be forthcoming until the 95th day after the taxpayer had filed his statement of appeal. In the absence of express provisions allowing the taxpayer, upon filing his statement of appeal, to obtain a stay of sale and to obtain possession of the seized property upon posting an equivalent bond, a review procedure entailing up to 95 days before decision is not in our opinion a prompt post-seizure hearing.

[6] MCLA 600.631; MSA 27A.631.

cussed, *infra,* the only issues before the circuit court are whether irreparable injury exists and whether the assessment has a basis in fact. Assuming that seizure has injured a taxpayer in a way that could not be adequately remedied by a judgment in a refund suit, and assuming that there is no basis in fact for the assessment, it seems to us fair that the taxpayer not be required to pursue his property—seized with perfunctory notice and without hearing—beyond the county of his residence. The Legislature is free to provide otherwise by law for a prompt post-seizure hearing.

## IV

The United States Supreme Court has most recently dealt with the question of procedure under the Internal Revenue Code in the context of jeopardy terminations and assessments. In *Laing v United States,* 423 US 161; 96 S Ct 473; 46 L Ed 2d 416 (1976), the Court construed the relevant statutes in such a way as to make the procedures for assessment and collection of jeopardy deficiencies under 26 USC 6861 *et seq.* applicable when assessing and collecting unreported tax due after a jeopardy termination under 26 USC 6851(a)(1). The procedural safeguards found necessary were: (1) taxpayer access to the Tax Court within 60 days of the jeopardy assessment; (2) taxpayer ability to stay collection of the amount assessed by posting an equivalent bond; and (3) prohibition on sale of any property seized pending final determination of the deficiency by the Tax Court. It is clear that such a statutory construction in *Laing* made decision as to the constitutionality of § 6851 *absent* such procedural safeguards unnecessary. Furthermore, in footnote 26 the Court posed but expressly did not answer the question of whether even these

safeguards would be constitutionally adequate without the additional protection of a "prompt post-assessment hearing":

"The taxpayers do not question here, and we do not consider whether, even if the jeopardy assessment procedures of § 6861 *et seq.* are followed, due process demands that the taxpayer in a jeopardy assessment situation be afforded a prompt post-assessment hearing at which the Government must make some preliminary showing in support of the assessment. See *North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601, 607 [95 S Ct 719; 42 L Ed 2d 751] (1975); *Mitchell v W T Grant Co,* 416 US 600, 610–611 [94 S Ct 1895; 40 L Ed 2d 406] (1974); *Fuentes v Shevin,* 407 US 67, 72 [92 S Ct 1983; 32 L Ed 2d 556] (1972)."[7]

See, also, the concurring opinion by Justice Brennan, 423 US 161 at 185–188.

The issue of whether some opportunity for a prompt post-seizure hearing is required was addressed in *Commissioner of Internal Revenue v Shapiro,* 424 US 614; 96 S Ct 1062; 47 L Ed 2d 278 (1976). The precise question there involved was the scope of the Internal Revenue Code's Anti-Injunction Act, 26 USC 7421(a), in the context of a summary seizure of a taxpayer's assets pursuant to a jeopardy assessment. Looking to *Enochs v Williams Packing & Navigation Co, Inc,* 370 US 1; 82 S Ct 1125; 8 L Ed 2d 292 (1962), and its judicially created exception to the anti-injunction provision of the code, the Court held in *Shapiro* that a taxpayer may obtain injunctive relief against collection upon a finding by the trial court that (1) a taxpayer's remedy in a refund suit is "inadequate to repair any injury that might be caused by an erroneous assessment or collection of an asserted

---

[7] 423 US at 184.

tax liability",[8] and that (2) the tax assessment has no basis in fact. Resolution of the question of whether the assessment has a basis in fact will depend upon disclosure by the government of the information available to it at the time of suit. Disclosure may be made by affidavits "so long as they disclose basic facts from which it appears that the Government may prevail".[9] If however the facts do not disclose probable cause to support the assessment, and equity jurisdiction otherwise exists, an injunction may issue in spite of the statute.

Although the Court in *Shapiro* did not base its holding on the Fifth Amendment, but rather on the *Williams Packing* exception to the Anti-Injunction Act, it was clear that its standard was "at least as favorable to the taxpayer as that required by the Constitution".[10] In rejecting the government's claim that the district court was without jurisdiction to grant the injunctive relief requested, the Court said:

"[C]onstruing the Act to permit the Government to seize and hold property on the mere good-faith allegation of an unpaid tax would raise serious constitutional problems in cases, such as this one, where it is asserted that seizure of assets pursuant to a jeopardy assessment is causing irreparable injury. This Court has recently and repeatedly held that, at least where irreparable injury may result from a deprivation of property pending final adjudication of the rights of the parties, the Due Process Clause requires that the party whose property is taken be given an opportunity for some kind of predeprivation or prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made. Here the Government seized

[8] 424 US at 629.
[9] 424 US at 633.
[10] 424 US 633.

respondent's property and contends that it has abso-
lutely no obligation to prove that the seizure has any
basis in fact no matter how severe or irreparable the
injury to the taxpayer and no matter how inadequate
his eventual remedy in the Tax Court."[11]

The result of the *Laing-Shapiro* decisions in the
context of Federal jeopardy assessments is that the
taxpayer's property cannot be sold pending a judi-
cial determination of the legality of the assess-
ment and, because an injunction restraining collec-
tion may issue upon a finding of irreparable injury
and lack of factual basis for the assessment, the
taxpayer has a judicial forum for a prompt post-
seizure hearing.

V

A statute prohibits the issuance of injunctions
"to stay proceedings for the assessment and collec-
tion of any tax levied under" the Income Tax Act.[12]
Another statute prohibits the maintenance of an
action for replevin of "any property taken by
virtue of any warrant for the collection of any tax
* * * in pursuance of any statute of this state".[13]
Following the reasoning of *Shapiro,* and because of
the unique nature of summary seizures, we find
that the state cannot lay valid claim to acting
"under" or "pursuant to" statute if it is deter-
mined that there is no factual basis for the assess-
ment. Accordingly, if the circuit court makes such
a finding in favor of the taxpayer and equity

---

[11] 424 US at 629–630 (footnotes omitted).

[12] MCLA 206.422(2); MSA 7.557(1422)(2). *See also* MCLA 205.72;
MSA 7.543 (Sales Tax).

[13] MCLA 600.2920(1)(a); MSA 27A.2920(1)(a).

jurisdiction otherwise exists, the court may enter an appropriate order for the return of the seized property.

## VI

The circuit court determined that plaintiffs had been denied due process of law because Treasury, contrary to the procedure set forth in the statutes, seized plaintiffs' property prior to notice by certified mail of the finding of jeopardy and prior to demand for immediate return and payment of the tax. However, it is clear that when plaintiffs filed their action on June 5, 1972, the levies were in technical compliance with the statute.[14] Therefore, the issues more appropriately before the court on remand are whether plaintiffs' remedy in a refund suit is adequate and whether the tax assessment has a basis in fact. An affirmative finding on either issue will result in a dismissal of plaintiffs' suit. Plaintiffs have the burden of pleading and ultimately proving that a refund suit is an inadequate remedy. So also is it their burden of proving that the assessment lacked a factual basis—judged according to the information available to Treasury at the time of suit. The relevant facts in Treasury's possession must be made available to plaintiffs either through voluntary disclosure or discovery. Disclosure in the form of affidavits is sufficient, the question being whether they demonstrate probable cause to support the assessment.

The Court of Appeals is reversed, and the matter remanded to the circuit court for proceedings

---

[14] *See* fn 7 of *Shapiro,* 424 US at 622–623, and the Court's resolution of the parties' factual dispute as to whether that levy was in conformity with the statute.

not inconsistent with this opinion. Costs to abide the outcome.

KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred with FITZGERALD, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(to affirm).* Plaintiffs filed an action in replevin and seek a return of funds held by the Department of Treasury. Although I am sympathetic with the results reached by the majority, I cannot agree with the chosen route. I would affirm the Court of Appeals.[1] Plaintiffs did not exhaust their statutory remedies nor did they state a claim which warranted the early circuit court intervention.

On March 3, 1972, the Detroit police seized funds from a safety deposit box belonging to plaintiffs. The Department of Treasury made a jeopardy tax assessment on March 8. The following day pursuant to tax warrants issued with the assessments, the department seized some of the money held by the police. Notice was mailed to plaintiffs on March 11.

Plaintiffs filed a complaint in Wayne County Circuit Court on June 5, 1972, claiming that "the alleged jeopardy assessment by the Michigan Department of Treasury is both unjust and incorrect". They sought a return of the funds. The Department of Treasury moved for accelerated judgment claiming that the circuit court lacked jurisdiction of the subject matter.

In an opinion filed November 21, 1972, the circuit court found:

---

[1] 49 Mich App 599; 212 NW2d 235 (1973).

" * * * that the legal procedure for the state to collect or receive and hold property has not been followed; *i.e.,* the department had not determined the amount of tax due from the taxpayer. Further, the taxpayer was never notified of the state's intent to levy or determine a taxable amount. This court feels that notice is absolutely required, and the lack of such notice is a fatal defect in the proceedings by the state."

Thus, "the procedural due process of laws due the petitioners" was found violated. The money was ordered returned.

The Court of Appeals reversed on September 25, 1973. It found the circuit court was not a proper forum since the complaint did not claim that the statute was unconstitutional on its face. The Court noted that the parties conceded "the Michigan statutes authorizing tax warrants are not unconstitutional". The Court held "that the plaintiffs failed to exhaust their administrative remedies under the available statutes".

The department acted in this case under the jeopardy assessment provisions of the Income Tax Act and the Use Tax Act. The former is MCLA 206.423(2); MSA 7.557(1423)(2), which reads in part:

"If the department finds that a person liable for tax under any provisions of this act designs quickly to depart from the state or to remove his property therefrom, or to conceal himself or his property herein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the tax unless the proceedings are brought without delay, the department shall give notice of such findings to the person, together with a demand for an immediate return and immediate payment of the tax. Warrant may issue immediately upon issuance of a jeopardy assessment. Thereupon, the tax shall become immediately due and payable."

The use tax provision is almost identical. See MCLA 205.110; MSA 7.555(10).

The Income Tax Act provides that any taxpayer "aggrieved by any determination of tax liability made by the department may appeal to the State Board of Tax Appeals * * * or, after payment, * * * may bring an action" in the Ingham Circuit Court. MCLA 206.421(3); MSA 7.557(1421)(3). The Use Tax Act does not have such a provision. However, MCLA 205.7; MSA 7.657(7) states a person "aggrieved by any assessment, decision or order of the department of revenue may pursue any appropriate procedure provided by law for the judicial review of the issues involved or have an appeal * * * to the state board of tax appeals".

In *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710, 727, 728; 190 NW2d 219 (1971), it was said "the theory of administrative law dictates that courts move very cautiously when called upon to interfere with the assumption of jurisdiction by an administrative agency". There are also practical considerations. Administrative agencies handle matters "often technical in nature, and closely related to the carrying out of some statutorily defined public policy". The agencies have "technical fact-finding expertise". Judicial restraint permits utilization of this expertise "while minimizing the burden on court resources". Such considerations result in a policy "by which the courts have declined to act in contravention of administrative agencies where the remedies available through administrative channels have not been pursued to completion".

Courts will not interfere with the administrative process when the agency is authorized to decide the question presented. See *Hippensteel v System Federation No 9,* 337 Mich 251; 59 NW2d 278

(1953), and *Cicotte v Damron,* 345 Mich 528; 77 NW2d 139 (1956). The plaintiffs in *French v Ingham County,* 342 Mich 690, 697, 698, 700; 71 NW2d 244 (1955) challenged certain annexation petitions. The courts said the statutes "clearly indicate that the legislature intended to vest the board of supervisors with the authority to pass on the legality and sufficiency of annexation petitions". The Court stated:

"[T]he question presented here is whether a court of equity should interfere to prevent the defendant board of supervisors from performing the duty expressly vested in it by statute. It may not be assumed that a proper conclusion will not be reached on the question as to whether the petitions comply with the home-rule act. We have repeatedly recognized that there shall be no judicial usurpation of the functions of administrative bodies. *Goodfellow v Detroit Civil Service Commission,* 312 Mich 226, 232 [20 NW2d 170 (1945)]; *Purdie v Detroit Police Department Trial Board,* 318 Mich 430 [28 NW2d 283 (1947)]."

The Court affirmed the trial court's refusal "to prevent the defendant board of supervisors from performing the duty resting on it under the statute".

However, it is recognized that the Court's reluctance to interfere with administrative procedures can be properly overcome. The plaintiff in *Diggs v State Board of Embalmers & Funeral Directors,* 321 Mich 508, 514, 518; 32 NW2d 728 (1948), had his license revoked. The statute provided an appeal process. Plaintiff chose another route claiming that the statute under which the board acted was unconstitutional. The board's motion to dismiss this claim was denied.

In affirming, the Court noted that it had "repeatedly held that in cases where an irreparable

injury will result from the acts of public officials in attempting to proceed under an invalid law" courts could fashion injunctive relief and determine the statute's constitutionality. The Court stated:

"[T]he appeal provided for by the statute that plaintiff attacks may not be said to afford him an adequate remedy. It is by its terms limited to a review of the orders and procedure of the board under the statute. Obviously it was not intended by the legislature in its enactment that it should furnish a means of challenging the constitutionality of the entire statute."

Also see *Long v Highland Park,* 329 Mich 146; 45 NW2d 10 (1950), where plaintiff challenged the constitutionality of a zoning ordinance. The Court said the administrative process did not have to be followed. Plaintiffs did not want a building permit and the zoning authorities could not determine the constitutionality of the ordinance.

In *Hardy v State Personnel Director,* 392 Mich 1; 219 NW2d 61 (1974), the plaintiff sought an injunction against the transfer he claimed was "unconstitutional, illegal and amounted to a demotion without just cause". The circuit court issued a temporary injunction, retained jurisdiction and remanded the case to the Department of Civil Service for a hearing to determine if the transfer was a demotion.

In footnote 1 of the opinion, the remand was supported:

"Appellant has not persuaded us that he came within an exception to the exhaustion doctrine. His 'constitutional' challenge to his transfer was not of the type that warranted immediate court review. Appellant did not challenge the basic constitutionality of the Commission's authority. Rather he primarily raised a fact

question that was within the competency of the agency to determine in the first instance. The rights of appellant were adequately safeguarded by court review after the administrative fact-finding. See generally, Crampton and Holmes, ed, *The New Michigan Administrative Procedures Act Court Handbook,* 172–177 (1970); Crampton, *The Doctrine of Exhaustion of Administrative Remedies in Michigan,* 44 Mich State Bar J 10 (July, 1965); Davis, Administrative Law, 382–389 (1972)."

The note also said plaintiff had not shown "sufficient evidence of prejudgment on the part of the Civil Service Commission to allow him to immediately proceed to circuit court".

It is improbable that the Legislature intended failure to follow a statutory procedure to be good cause to trigger bypass of the administrative appeals provided. The agency should have an opportunity to correct its own mistakes through administrative appeal procedures prior to recourse to the courts.

Also, the statutory route allows issues to be defined and facts to be distilled so that they relate to those issues. Most cases are satisfactorily concluded in this manner. The remainder are made ripe for judicial consideration.[2]

The plaintiffs in the case at bar filed a complaint alleging that the jeopardy assessment is "both unjust and incorrect". There was no claim that the statute was unconstitutional. There was no claim that the statutory procedures as they fell upon plaintiffs were unconstitutional. Treasury had not followed the statute. Plaintiffs' sole request was for the return of the money.

The Income Tax Act provides an appeal process

---

[2] The case at bar is an excellent example of a case not ready for judicial deliberation.

for taxpayers "aggrieved by any determination of tax liability made by the department". For actions under the Use Tax Act taxpayers "may pursue any appropriate procedure provided by law for the judicial review of the issues involved or have an appeal * * * to the state board of tax appeals". The cases discussed above indicate that plaintiffs should exhaust the administrative procedures before there is a "judicial review of the issues involved", especially since their claim did not involve constitutional questions. Compare *Diggs* and *Long.*

In this day of courts inundated by litigation, it is especially important to remember that, in addition to *doing,* courts have the ability *not to do,* or not to act until a case for judicial appraisal is well formed.

I would affirm the Court of Appeals.